WARFIELD TOBACCO, INC., Plaintiff,

v.

**R.J. REYNOLDS TOBACCO COMPANY, Defendant.**

No. CIV. A. 97–379.

United States District Court,
E.D. Kentucky.

Jan. 6, 1999.

Lindsey Ingram, Jr., Stoll, Keenon & Park, LLP, Lexington, KY.

John D. Preston, Perry & Preston, Paintsville, KY.

Charles E. Shivel, Jr., Stoll, Keenon & Park, LLP, Lexington KY.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

The defendant, R.J. Reynolds Tobacco Company ("RJR"), has moved the Court [Record No. 40] for summary judgment. The plaintiff has responded [Record No. 42], to which the defendant has replied [Record No. 44]. This matter is now ripe for decision.

The following are the pertinent facts. Plaintiff is a retail tobacco outlet owned by David Marcum and located in Inez, Kentucky. Marcum is the sole shareholder and officer of the corporation. Plaintiff sells various tobacco products, including cigarettes manufactured by RJR. It also sells cigarettes manufactured by other tobacco companies, such as Phillip Morris and Brown Williamson Tobacco Company.

In March 1997, plaintiff and RJR were parties to the RJR merchandising agree-

ment. Under the terms of the agreement, plaintiff had certain in-store merchandising and advertising obligations. In return for the agreed upon location of products, displays, and advertising, RJR agreed to make monthly payments to plaintiff.

Furthermore, by virtue of having a merchandising contract with RJR, plaintiff was eligible to participate in promotions called "buy-downs", which RJR established in order to keep pace with its competition. A buy-down is a payment made by RJR on a per carton or per pack basis.

Before February 14, 1997, plaintiff had concurrent agreements with RJR, Phillip Morris, and Brown & Williamson. On or about February 14, 1997, plaintiff entered into an exclusive merchandising agreement with Phillip Morris. In the tobacco industry, this type of agreement is called a "PM exclusive" agreement because its terms give Philip Morris's products most of the advertising and merchandising opportunities in the participating store.

Because many of the terms of the Philip Morris agreement were in direct conflict with the RJR merchandising agreement, plaintiff breached the RJR agreement when it entered into the exclusive agreement with Philip Morris. As a result of plaintiff's termination of the RJR agreement in February 1997, RJR ceased offering buy-downs in plaintiff's store.

Plaintiff's complaint alleges that RJR's March 1997 cessation of the "rebates"[1] was wrongful. Plaintiff claims that RJR's refusal to offer buy-downs in its store violates KRS § 365.020 and KRS § 365.050 because said refusal constitutes discriminatory pricing with the intent to destroy plaintiff's ability to compete in the retail tobacco business. Plaintiff also alleges that from October 1996 through March 1997, RJR failed to promote products in its store while it was offering more generous promotions to plaintiff's competitors.[2]

1. Rebates are the same as buy-downs.

2. At its essence, plaintiff's lawsuit seeks to allow it to continue the PM exclusive arrangement

As noted above, two distinct time periods are involved in this case. The first time period is the six-month period from October 1996 until March 1997, during which plaintiff alleges that the RJR buy-downs it received were less than the buy-downs other retail tobacco businesses received. The second time period is the period from March 1997 until the present; plaintiff has received no buy-downs during this period.

The first issue to be addressed is plaintiff's claim under KRS 365.020. KRS 365.020 states the following:

> (1) No person ... with the intent to destroy the competition of any regular established dealer ... shall discriminate between different sections, communities or cities, or portions thereof or locations therein, in this state, by selling or furnishing such commodity ... at a lower rate in one section, community or city ... than in another ....
>
> (2) ... This section is not intended to prohibit the meeting in good faith of a competitive rate ....

For RJR to be liable to plaintiff for unfair trade practices under this statute, plaintiff must prove three elements: (1) plaintiff must show that as a result of RJR's conduct, it paid a higher rate for RJR's cigarettes than others paid; (2) plaintiff must show that RJR sold or furnished tobacco products at a lower rate to plaintiff's competitors with the intent to destroy plaintiff's ability to compete in the retail tobacco business; and (3) plaintiff must show that RJR's marketing practices are not good faith efforts to meet competition.

■ As for the first time period, there is no substantive evidence in the record that other retail establishments received greater buy-downs than plaintiff did. Although Marcum states that he conducted some "price checks" at other retail establishments, he asserts that no one ever told him the amount of the buy-down. The main problem with Marcum's proof is that it is based on the assumption that just because a retailer may have been selling RJR cigarettes at a cheap-

while simultaneously benefitting from RJR's buy-down program.

er price than plaintiff it had to have been receiving a larger buy-down from RJR than plaintiff. This, however, is not necessarily true. Because Marcum admits that he does not know how much anyone else is receiving for buy-downs, there is no proof that RJR violated the statute.[3]

Even if, however, plaintiff could show that it received smaller buy-downs, it has no evidence that RJR intended to destroy its ability to compete. Additionally, there is no evidence in the record that RJR did not act in good faith when it dealt with plaintiff. To the contrary, the evidence shows that during the first time period RJR offered buy-downs to retailers based solely in response to its competition. RJR's sales representatives assessed what the competition was doing by way of cigarette discounting and offered buy-downs to match that competition.

In *Belfry Coal Corp. v. East Kentucky Beverage Company,* 294 S.W.2d 539 (Ky. 1956), the plaintiff alleged that a distributor of soft drinks was charging him a higher price for soft drinks than it charged his competition. The *Belfry* court found that any difference in prices charged by the distributor to its customers was driven by what the distributor's competition was charging:

> We do not believe it was the intention of the statute to penalize distributors in cases where mala fides is not involved, and we can find not even a trace of that here. The appellee, as we understand the record, had lowered the price to the entire country merely for the purpose of meeting competition. When his competitors increased their price, he gladly accepted for his own benefit a price which would return to him a reasonable profit for his labors, but the action was not directed at injuring a customer. The record fails to disclose, even in the slightest degree, ill feeling or ill intentions toward appellant and is lacking, we believe, the gravamen of the offense, i.e., the intention to destroy the competition of his dealer.

*Id.* at 541. As noted above, even if the plaintiff at bar could show that there were differences in the amount of buy-downs, it still did not show that such differences existed because of RJR's ill intent or that they existed for any reason other than to meet competition.

■ Although RJR concedes that it ceased offering buy-downs to plaintiff from March 1997 until the present, the reason it did so was because plaintiff went PM exclusive. Marcum admits that once he entered into the PM exclusive contract he would not be able to meet his obligations under the RJR merchandising agreement. In essence, his decision to go PM exclusive terminated his agreement with RJR.

After plaintiff terminated the RJR agreement, RJR quit offering plaintiff buy-downs because it does not offer buy-downs to retail tobacco stores who are not parties to an RJR merchandising agreement. There is no evidence that plaintiff has been treated any differently than any tobacco store that is not a party to an RJR agreement.[4] In fact, Marcum admits that he does not know which stores have RJR agreements and which stores do not have such agreements.[5]

■ Plaintiff's claim under KRS 365.050 must also be dismissed. KRS 365.050 states, in pertinent part:

> The secret payment or allowance of rebates, refunds, commissions or unearned discounts ... where such payment or allowance tends to destroy competition, is an unfair trade practice ...

Plaintiff has failed to show any secret payments or rebates on the part of RJR. RJR's buy-downs are not secrets, but rather simple marketing devices used to meet competition.

In summary, there is no evidence that RJR was unfairly or maliciously discriminating against plaintiff. Plaintiff's contention that RJR, a company whose business it is to sell cigarettes, is willing to lose cigarette sales in an attempt to drive plaintiff out of business, for no apparent reason, defies both

---

3. In fact, the only substantive evidence on this point shows that RJR did not discriminate.

4. Plaintiff is the one who refuses to execute a contract with RJR. All RJR requires is that it be treated the same as other manufacturers in plaintiff's store.

5. There is no evidence of discriminatory intent or bad faith on the part of RJR.

economic intuition and common sense. Plaintiff's claims are based on pure speculation, and they must be dismissed. Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment [Record No. 40] be, and the same hereby is, **GRANTED.**